**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEAN SHOOP,** | : | |
| **Petitioner** | : | **No. 1:25-cv-00943** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **THE PENNSYLVANIA BOARD OF** | : | |
| **PAROLE, et al.,** | : | |
| **Respondents** | : | |

**MEMORANDUM**

Currently before the Court is pro se Petitioner Dean Shoop ("Shoop")'s petition for a writ

of habeas corpus under 28 U.S.C. § 2254 in which he challenges his denial of state parole.  For

the reasons stated below, the Court will deny the petition.

**I.     BACKGROUND**

**A.     Shoop's Convictions and Sentence**

The factual and procedural history underlying Shoop's criminal convictions and sentence

is set out in part as follows:

> In June of 1998, [Shoop] engaged in inappropriate conduct with his two daughters.
> The police arrested him in July of 2001 and charged him with various offenses.
> Following a trial [in the Court of Common Pleas of Franklin County] on August
> 29, 2002, a jury convicted him of one count each of sexual abuse of children,
> endangering the welfare of children, corruption of minors, and providing
> intoxicants to minors.  The trial court deferred sentencing pending an assessment
> of [Shoop] by the Sexual Offenders Assessment Board ("SOAB"), and a sexually
> violent predator ("SVP") hearing.
>
> On December 9, 2002, the trial court held a hearing, designated [Shoop] an SVP,
> and sentenced him to an aggregate term of seven to twenty-one years of
> imprisonment.    [Shoop] filed a timely appeal.    On March 22, 2004, [the
> Pennsylvania Superior Court] affirmed his judgment of sentence.  [Shoop] did not
> seek further review [with the Pennsylvania Supreme Court].
>
> On March 4, 2005, [Shoop] filed a pro se PCRA petition.  The PCRA court
> appointed counsel, and PCRA counsel filed a "no-merit" letter and petition to
> withdraw pursuant to Commonwealth v. Turner, 518 Pa. 491, 544 A.2d 927 (Pa.

1988), and Commonwealth v. Finley[,] 379 Pa. Super. 390, 550 A.2d 213 (Pa. Super. 1988) (en banc).  On June 7, 2005, the PCRA court granted counsel's petition to withdraw and stated its intention to dismiss [Shoop]'s PCRA petition pursuant to Pa. R. Crim. P. 907.  By order entered July 22, 2005, the PCRA court denied [Shoop]'s petition.  [Shoop] did not file an appeal.

On May 20, 2019, [Shoop] filed another pro se PCRA petition.  On June 17, 2019, he filed a "Supplemental Issue to his Pending PCRA Petition."  On July 25, 2019, [Shoop] filed a motion for appointment of counsel, which the PCRA court denied on August 2, 2019.  The Commonwealth filed an answer [to Shoop's second PCRA petition].  Thereafter, the PCRA court sua sponte asked the parties to address the timeliness of the PCRA petition.  Both [Shoop] and the Commonwealth complied.  On August 12, 2019, the PCRA court issued [a] Rule 907 notice of its intention to dismiss the petition without a hearing.  [Shoop] filed a response.  By order entered September 18, 2019, the PCRA court denied [Shoop]'s second PCRA petition on the basis that it was untimely filed and the court lacked jurisdiction to address his claims.  [Shoop] filed a timely notice of appeal, and both he and the PCRA court complied with Pa. R.A.P. 1925.

See Commonwealth v. D.S., No. 1659 MDA 2019, 2020 WL 2299744, at *1 (Pa. Super. Ct. May 7, 2020) (unpublished).  On May 7, 2020, the Pennsylvania Superior Court affirmed the dismissal of Shoop's second PCRA petition.  See id. at *1, 3.

### B.    Shoop's Incarceration and Parole Proceedings

Shoop is incarcerated at Pennsylvania State Correctional Institution Rockview.  (Doc. No. 1 at 3.)  According to information provided by the Commonwealth of Pennsylvania Department of Corrections ("DOC"), Shoop's minimum sentence expired on October 26, 2014, and his maximum sentence date is October 26, 2028.  (Doc. Nos. 8 ¶¶ 3–4; 8-2 at 1, 2.)  Since the expiration of his minimum sentence, the Commonwealth of Pennsylvania Board of Probation and Parole ("Parole Board") has denied Shoop parole ten (10) times, i.e., on October 24, 2015; October 14, 2016; January 24, 2018; March 19, 2019; April 8, 2020; March 9, 2021; March 11, 2022; March 24, 2023; March 28, 2024; and March 18, 2025.  (Doc. Nos. 1 at 2; 8 ¶¶ 5–14; 8-3–

8-12.)  The Parole Board's reasons for denying parole on each of these occasions are set forth below.[1]

### 1.    October 24, 2015

The Parole Board first denied Shoop parole via a written decision dated October 24, 2015.  In its written denial, the Parole Board explained that it considered its interview with him, its review of his file, and "all matters required pursuant to the [Parole Board]."  See (Doc. No. 8-3 at 1).  The Parole Board also identified the following reasons to deny Shoop parole: (1) his "risk and needs assessment indicat[ed his] level of risk to the community"; (2) his "prior unsatisfactory parole supervision history"; (3) "[r]eports, evaluations and assessments/level of risk indicate[d his] risk to the community"; and (4) "[t]he negative recommendation made by the prosecuting attorney."  See (id.).  The Parole Board further indicated that Shoop would be reviewed for parole "in or after October[] 2016," and that, at his next interview, it would consider whether he: (1) "maintained a favorable recommendation for parole from the [DOC]"; (2) "maintained a clear conduct record"; (3) "completed the [DOC's] prescriptive programs"; and (4) "continu[ed] voluntary participation."  See (id. at 1–2).

### 2.    October 14, 2016

Shoop's second parole denial occurred by written decision on October 14, 2016.  (Doc. No. 8-4.)  In its written decision, the Parole Board once again explained that in reaching its decision, it considered its interview with him, its review of his file, and "all matters required pursuant to the [Parole Board]."  See (id. at 1).  The Parole Board stated that it denied Shoop parole because of: (1) his "risk and needs assessment indicating [his] level of risk to the

---

[1]  Each of the Parole Board's decisions is written in capital letters.  See (Doc. Nos. 8-3–8-12).  To assist with the readability of this Memorandum, the Court has not followed the Parole Board's typeface in its written decisions.

community"; (2) his "prior unsatisfactory parole supervision history"; and (3) "[r]eports, evaluations and assessments/level of risk indicating [his] risk to the community." See (id.). The Parole Board also stated that Shoop would be reviewed for parole "in or after October[] 2018," and that, at his next interview, the Board would consider whether he: (1) "maintained a favorable recommendation for parole from the [DOC]"; (2) "maintained a clear conduct record"; (3) "completed the [DOC's] prescriptive programs"; and (4) "continu[ed] participation in voluntary programming." See (id.).

### 3.    January 24, 2018

The Parole Board denied Shoop parole for a third time on January 24, 2018. (Doc. No. 8-5.) In its written decision, the Parole Board pointed out that in denying parole, it considered its interview with him, its review of his file, and "all matters required pursuant to the [Parole Board]." See (id. at 1). The Parole Board also indicated that it denied Shoop parole because: (1) he "need[ed] to participate in and complete institutional programs"; (2) his "risk and needs assessment indicat[ed] [his] level of risk to the community"; (3) his "prior unsatisfactory parole supervision history"; and (4) "[r]eports, evaluations and assessments/level of risk indicate[d his] risk to the community." See (id.). The Parole Board further stated that Shoop would be reviewed for parole "in or after October[] 2018," and that, at his next interview, the Board would consider whether he: (1) "successfully participated in/successfully completed a treatment program for sex offenders"; (2) maintained a favorable recommendation for parole from the [DOC]"; (3) "maintained a clear conduct record"; and (4) "completed the [DOC's] prescriptive programs." See (id. at 1–2).

### 4.    March 19, 2019

Shoop's fourth parole denial occurred on March 19, 2019.  (Doc. No. 8-6.)  In its written decision, the Parole Board disclosed that in considering whether to grant parole it considered its interview with him, its review of his file, and "all matters required pursuant to the [Parole Board]."  See (id. at 1).  The Parole Board explained that it denied Shoop parole due to: (1) his "institutional behavior, including reported misconducts"; (2) his "risk and needs assessment indicating [his] level of risk to the community"; (3) "the negative recommendation made by the [DOC]"; (4) his "prior unsatisfactory parole supervision history"; (5) "[r]eports, evaluations and assessments/level of risk indicat[ing his] risk to the community"; (6) his "minimalization/denial of the nature and circumstances of the offense(s) committed"; (7) his "refusal to accept responsibility for the offense(s) committed; and (8) his "lack of remorse for the offense(s) committed."  See (id.).  The Parole Board also stated that Shoop would be reviewed for parole "in or after March[] 2020" and that, at his next interview, the Board would consider whether he received (1) "a favorable recommendation for parole from the [DOC]" and (2) "a clear conduct record."  See (id. at 1–2).

### 5.    April 8, 2020

Shoop's fifth parole denial occurred on April 8, 2020.  (Doc. No. 8-7.)  In its written decision, the Parole Board explained that it considered its interview with him, its review of his file, and "all matters required pursuant to the [Parole Board]."  See (id. at 1).  The Board then stated that it denied Shoop parole due to: (1) his "need to participate in and complete additional institutional programs"; (2) his "risk and needs assessment indicating [his] level of risk to the community"; (3) his "prior unsatisfactory parole supervision history"; and (4) "[r]eports, evaluations and assessments/level of risk indicat[ing his] risk to the community."  See (id.).  The

Parole Board also indicated that Shoop would be reviewed for parole "in or after March[] 2021" and that, at his next interview, it would consider whether he maintained (1) "a favorable recommendation for parole from the [DOC]" and (2) "a clear conduct record."  See (id.).

### 6.    March 9, 2021

Shoop's sixth parole denial occurred on March 9, 2021.  (Doc. No. 8-8.)  In its written decision, the Parole Board indicated that in reaching its decision, it considered its interview with him, its review of his file, and "all matters required pursuant to the [Parole Board]."  See (id. at 1).  The Board also pointed out that it denied Shoop parole due to: (1) his "risk and needs assessment indicating [his] level of risk to the community"; (2) his "prior unsatisfactory parole supervision history"; (3) "[r]eports, evaluations and assessments/level of risk indicate[d his] risk to the community"; (4) his "minimization/denial of the nature and circumstances of the offense(s) committed"; and (5) his "lack of remorse for the offense(s) committed."  See (id.). The Board also indicated that Shoop would be reviewed for parole "in or after March 2022" and that, at his next interview, the Board would consider whether he maintained (1) "a favorable recommendation for parole from the [DOC]" and (2) "a clear conduct record."  See (id. at 1–2).

### 7.    March 11, 2022

Shoop's seventh parole denial occurred on March 11, 2022.  (Doc. No. 8-9.)  In its written decision, the Parole Board noted that it considered its interview with him, its review of his file, and "all matters required pursuant to the [Parole Board]."  See (id. at 1).  The Parole Board stated that it denied Shoop parole due to: (1) "[r]eports, evaluations and assessments/level of risk indicat[ing his] risk to the community"; (2) his "lack of remorse for the offense(s) committed"; and (3) the "nature of the crime."  See (id.).  The Parole Board also stated that Shoop would be reviewed for parole "in or after March[] 2023" and that, at his next interview,

the Parole Board would consider whether he: (1) "maintained a favorable recommendation for parole from the [DOC]"; (2) "maintained a clear conduct record"; and (3) had a "detailed written plan of action on how to react to [his] triggers," which would "be available at time of review." See (id.). The Parole Board further "suggest[ed]" that Shoop "review sex offender materials" and "recommend[ed]" that he "further develop and understand how to apply what [he] learn[s] in programs to [his] specific situation." See (id. at 2).

### 8. March 24, 2023

The Parole Board denied Shoop parole for the eighth time on March 24, 2023. (Doc. No. 8-10.) In its written decision denying parole, the Parole Board indicated that it considered its interview with him, its review of his file, and "all matters required pursuant to the Prisons and Parole Code [("Code")]." See (id. at 1). The Parole Board stated that it denied Shoop parole due to: (1) his "institutional behavior, including reported misconducts"; (2) "the negative recommendation made by the [DOC]"; (3) his "minimization/denial of the nature and circumstances of the offense(s) committed; and (4) "the negative recommendation by the prosecuting attorney." See (id. at 1). The Parole Board also indicated that Shoop would be reviewed for parole "in or after March, 2024" and that, at his next interview, the Board would consider whether he received (1) "a favorable recommendation for parole from the [DOC]" and (2) "a clear conduct record." See (id.).

### 9. March 28, 2024

The Parole Board denied Shoop parole for the ninth time on March 28, 2024. (Doc. No. 8-11.) In its written decision denying parole, the Parole Board noted that it considered its interview with him, its review of his file, and "all matters required pursuant to the [Code]." See (id. at 1). The Parole Board stated that it denied Shoop parole due to: (1) his "institutional

behavior, including reported misconducts"; (2) his "risk and needs assessment indicating [his] negative recommendation made by the [DOC]"; (3) "the negative recommendation by the prosecuting attorney"; (4) his "prior unsatisfactory supervision history"; (5) his "minimization/denial of the nature and circumstances of the offense(s) committed"; (6) his "refusal to accept responsibility for the offense(s) committed"; (7) his "lack of remorse for the offense(s) committed"; (8) "the negative recommendation made by the prosecuting attorney; and (9) "the nature of [his] crime." See (id. at 1). The Parole Board also indicated that Shoop would be reviewed for parole "in or after March 2024" and that, at his next interview, it would consider whether he: (1) complied "with DOC ordered mental health services"; (2) "received a favorable recommendation for parole from the [DOC]"; and (3) "received a clear conduct record." See (id. at 2).

### 10. March 18, 2025

The Parole Board denied Shoop parole for the tenth time on March 18, 2025. (Doc. No. 8-12.) In its written decision denying parole, the Parole Board explained that it considered its interview with him, its review of his file, and "all matters required pursuant to the [Code]." See (id. at 1). The Parole Board stated that it denied Shoop parole due to his: (1) "risk and needs assessment indicating [his] negative recommendation made by the [DOC]"; (2) "prior unsatisfactory supervision history"; (3) "failure to demonstrate motivation for success"; (4) "minimization/denial of the nature and circumstances of the offense(s) committed"; (5) "refusal to accept responsibility for the offense(s) committed; (6) "lack of remorse for the offense(s) committed"; (7) "need[] to develop better insight"; and (8) "the nature of [his] crime." See (id.). The Parole Board also indicated that Shoop would be reviewed for parole "in or after March[] 2027" and that, at his next interview, the Board would consider whether he maintained (1) "a

favorable recommendation for parole from the [DOC]" and (2) "a clear conduct record."  See (id. at 2).

### C.    Shoop's Habeas Petition

Shoop commenced this action by filing the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254, which the Clerk of Court docketed on May 28, 2025.  (Doc. No. 1.)  In his petition, Shoop asserts that the Board denied him parole in 2024 and 2025 despite all the things he "accomplished to demonstrate that he is rehabilitated."  See (Doc. No. 1 at 2).  He points out that during his twenty-four (24) years in prison, he has completed, inter alia: (1) an Occupational Safety and Health Administration ten (10)-hour construction safety and health course, see (Doc. Nos. 1 at 2; 1-1 at 7); (2) workshops provided by Penn State's Prison Education Program, see (Doc. Nos. 1 at 2; 1-1 at 8–9); (3) a re-entry success plan, see (Doc. Nos. 1 at 2; 1-1 at 12–16); and (4) "almost every workshop" in the Reentry Service Office "at least 3 or 4 times." See (Doc. Nos. 1 at 2; 1-1 at 18–21).  Shoop also attaches to his petition a letter brief submitted by his counsel in support of his request for parole in March 2023, including the numerous exhibits counsel had attached to the brief.  (Doc. Nos. 1-1 at 25–80; 1-2, 1-3.)

In addition, Shoop contends that the Board's "reasons seem to be manufactured in order to continue the incarceration for what could only be described as population control, or a failure of adequate review and due process."  See (Doc. No. 1 at 2).  He asserts that the Board did not spend enough time reviewing him, and they never visited his cell, classroom, or his groups.  (Id.) Instead, the Board "based [its] decision soley [sic] on a report composed and designed to express the negative things [he] has done in his past."  See (id.).

Overall, Shoop argues that the Board violated his due process rights by denying him parole for arbitrary or constitutionally impermissible reasons.  (Id.)  For relief, Shoop seeks his

release on parole as well as "an audit of SCI Rockview parole dep't [sic] to determine the motives for petitioner's and so many other denials of liberty." See (id.).

On June 12, 2025, the Court issued an Order directing Respondent to file a response to Shoop's habeas petition. (Doc. No. 6.) Respondents timely filed a response in opposition to the petition on June 17, 2025, in which they argue that, inter alia, (1) the Court's review is limited to Shoop's most recent parole denial, (2) Shoop failed to exhaust his state-court remedies prior to filing his petition, and (3) his claims are meritless. (Doc. No. 8.) Although Shoop had until July 1, 2025, to file a reply to Respondent's response (Doc. No. 6 at 1), he has not done so. Therefore, Shoop's habeas petition is ripe for resolution.

## II.    LEGAL STANDARDS

### A.    Challenges to Parole Denials Under Section 2254

A state prisoner's challenge to the denial of parole is cognizable under Section 2254. See Coady v. Vaughn, 251 F.3d 480, 486 (3d Cir. 2001) (determining that jurisdiction to entertain state prisoner's habeas petition challenging denial of parole lies under Section 2254 and not 28 U.S.C. § 2241). However, a federal district court may not grant parole or determine parole eligibility. See Billiteri v. U.S. Bd. of Parole, 541 F.2d 938, 944 (2d Cir. 1976). Instead, "[t]he only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody."[2] See id.; see

---

[2] As stated above, Shoop requests to be released on parole and seeks an Order of the "SCI Rockview parole dep't to determine the motives for petitioner's and so many other denials of liberty." See (Doc. No. 1 at 2). Shoop may not obtain either form of relief in this case because, as explained here, his only available relief is a new parole hearing absent the alleged constitutional violations. Therefore, the Court considers Shoop's petition in the context of his only available remedy, namely, an order directing the Parole Board to reexamine his eligibility for parole.

also <u>Bridge v. U.S. Parole Comm'n</u>, 981 F.2d 97, 105 (3d Cir. 1992) (explaining that "the relief a court may grant [from a parole denial] is limited").

**B.      Due Process Challenges to Parole Denials**

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  <u>See</u> U.S. Const. amend. XIV § 1.  "[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," nor has the Commonwealth of Pennsylvania created such a right. <u>See</u> <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979); <u>see also</u> <u>Burkett v. Love</u>, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing general principle that Pennsylvania's parole statute does not create a liberty interest in the right to be paroled); <u>Coady v. Vaughn</u>, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the [Parole Board] have a corresponding duty to grant the same.").  "Since a discretionary decision of the Parole Board denying an inmate early parole does not implicate any constitutionally [or state] protected liberty interest, the scope of federal judicial review of these decisions is necessarily quite limited." <u>Diehl-Armstrong v. Pa. Bd. of Prob. & Parole</u>, No. 13-cv-02302, 2014 WL 1871509, at *5 (M.D. Pa. May 7, 2014).  In this regard, the role of a federal court is confined to reviewing the substance of the state parole decision to determine whether the Parole Board violated the petitioner's substantive due process rights by exercising its authority in an arbitrary and capricious, or constitutionally impermissible manner.  <u>See</u> <u>Block v. Potter</u>, 631 F.2d 233, 236 (3d Cir. 1980).

To show a violation of substantive due process, a habeas petitioner must demonstrate that: (1) they were arbitrarily denied parole due to impermissible reasons such as race, religion, or political beliefs, and/or (2) the Parole Board failed to apply appropriate, rational criteria in

reaching its determination to deny parole.  See id. at 236; Bonsall v. Gillis, 372 F. Supp. 2d 805, 807 (M.D. Pa. 2005).  "However, federal courts are not authorized by the due process clause to second-guess parole boards[,] and the requirements of substantive due process are met if there is some basis for the challenged decision."  Coady, 251 F.3d at 487.  The "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'"  See Hunterson v. DiSabato, 308 F.3d 236, 247 (3d Cir. 2002) (citation omitted).

## III.    DISCUSSION

As indicated above, Shoop generally argues that the Board violated his substantive due process rights in denying him parole in 2024 and 2025.  In resolving Shoop's claims, the Court will first address Shoop's request to have the Court consider his 2024 and 2025 parole denials. Second, the Court will discuss Respondents' argument that Shoop failed to exhaust his administrative remedies.  Finally, the Court will address the merits of Shoop's habeas claims.

### A.    Shoop's Request to Review His 2024 and 2025 Parole Denials

Shoop appears to contest the Board's parole denials in 2024 and 2025.  (Doc. No. 1 at 2.) Respondents argue that the Court can only consider the Board's most recent parole denial in 2025.  (Doc. No. 8 at 4.)  The Court agrees.

Because the Board denied Shoop parole for a tenth time on March 18, 2025, his challenge to the denial of parole in 2024 or (any prior year) is moot.  As another District Court has explained:

> In many habeas cases, the crucial issue with respect to mootness is whether 'some concrete and continuing injury other than the now-ended incarceration or parole' might still be amenable to remedy.  Spencer[ v. Kemma, 523 U.S. 1, 7 (1998)].  In other words, there still may be a case or controversy before the court – even if the

injury that a complaining party seeks to remedy through litigation no longer exists – if there is a 'collateral injury' that is 'likely to be redressed by a favorable judicial decision.' Id. (quoting Lewis[ v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)]); Burkey[ v. Marberry, 556 F.3d 142, 147–51 (3d Cir. 2009)]. This is not the case, however, in the context of a parole denial or calculation. Rather, because the only relief that a court can grant in such circumstances is a new parole hearing, a subsequent hearing held by the Parole Board renders an inmate's challenge to the prior parole decision moot.

See Pullium v. Bd. of Prob. and Parole, No. 22-cv-00140, 2024 WL 3445462, at *2 (W.D. Pa. June 26, 2024) (citations omitted); see also Sims v. Mahally, No. 17-cv-01647, 2018 WL 5718498, at *3 (M.D. Pa. Nov. 1, 2018) ("The Parole Board has issued its most recent decision to deny Petitioner parole on January 11, 2017; therefore, to the extent that Petitioner challenges the Parole Board's decisions to deny him parole [in 2008, 2009, 2010, 2011, 2012, 2013, and 2015], these claims have been rendered moot." (citations omitted)); Brown v. Kauffman, No. 18-cv-00089, 2018 WL 4087551, at *4 (E.D. Pa. Aug. 9, 2018) ("[S]ince the appropriate remedy would have been a new hearing before the Board, and because Brown has since had another hearing, any challenge to the prior denial is now moot." (citations omitted)), report and recommendation adopted, 2018 WL 4054329 (E.D. Pa. Aug. 23, 2018). Therefore, the Court will consider only the Board's March 18, 2025 parole denial in this case.

### B.    Failure to Exhaust

Respondents contend that the Court should dismiss Shoop's habeas petition because he did not exhaust his state-court remedies insofar as he did not file a petition for mandamus with the Pennsylvania Commonwealth Court prior to filing his habeas petition in this case. (Doc. No. 8 at 4–8.) The Court disagrees.

Although a Pennsylvania state prisoner filing a habeas petition under Section 2254 is ordinarily required to fully exhaust their state-court remedies prior to filing their petition, see Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004) (explaining that state prisoners typically

must fully "exhaust their claims in state court before seeking relief from the federal courts" (citing 28 U.S.C. § 2254(b)(1)(A)), the Third Circuit Court of Appeals in DeFoy v. McCollough, concluded that a state prisoner challenging the denial of parole on constitutional grounds, other than asserting an ex post facto claim, is not required to exhaust state-court remedies prior to filing a habeas petition.  See 393 F.3d 439, 445 (3d Cir. 2005) ("[W]e conclude that claims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion.").  In DeFoy, the Third Circuit determined that the Commonwealth Court's decision in Weaver v. Pennsylvania Board of Probation & Parole, 688 A.2d 766, 771–72 (Pa. Commw. Ct. 1997), which "held that mandamus is not available to a prisoner denied parole based upon a constitutional error by the parole board," was "the best indication of how the Pennsylvania Supreme Court would resolve the issues" raised in the case.  See id. at 444.

Respondents argue that this Court should no longer follow DeFoy because since that decision, the Commonwealth Court has issued numerous decisions stating that state prisoners can file constitutional challenges to Parole Board denials of parole in mandamus actions in the Commonwealth Court's original jurisdiction.  See (Doc. No. 8 at 6–7 (citing cases)). Respondents' most recent cited case is Toland v. Pennsylvania Board of Probation and Parole, in which the Commonwealth Court held that "under [its] precedent, both ex post facto and due process challenges [to the Board's denial of parole] may be raised in a mandamus action."  See 263 A.3d 1220, 1233 (Pa. Commw. Ct. 2021).

As Respondents point out, some district courts in the Third Circuit have questioned "[t]he continuing validity of DeFoy."  See Begandy v. Pa. Bd. of Prob. and Parole, No. 19-cv-00639, 2021 WL 1986415, at *4 (W.D. Pa. May 18, 2021) (citing Bradley v. Wingard, No. 15-cv-00235,

2017 WL 11476608, at *2 (W.D. Pa. Oct. 12, 2017), report and recommendation adopted, 2018

WL 10150909 (W.D. Pa. Sept. 5, 2018)); (Doc. No. 8 at 7–8 (citing cases)); see, e.g., Harley v.

Pa. Parole Bd., No. 25-cv-01343, 2025 WL 1873016, at *2 (E.D. Pa. July 7, 2025) (agreeing with

other district courts within the Third Circuit that Toland "undercut[] the factual predicate on

which DeFoy was decided" and "expanded scope of state court review," and concluding that a

Section 2254 habeas petitioner "must raise due process challenges to parole board decisions in

state court before petitioning for federal habeas relief"); Purcell v. Pa. Parole Bd., No. 23-cv-

00311, 2024 WL 5340671, at *2 (W.D. Pa. Jan. 10, 2024) (indicating that habeas petitions

challenging denials of parole "are unexhausted and can be dismissed on that ground alone [under

Rule 4 of the Rules Governing Section 2254 Cases] because [DeFoy] is no longer good law"),

report and recommendation adopted, 2025 WL 240959 (W.D. Pa. Jan. 17, 2025).  In doing so,

those district courts essentially follow the same reasoning as Respondents' argument here, i.e.,

DeFoy no longer applies because the Pennsylvania caselaw it relied upon in concluding that

there was no mandamus remedy for constitutional challenges has changed to the contrary over

the almost twenty (20) years since it was decided.  See, e.g., Bowman v. Brittan, No. 23-cv-

02092, 2024 WL 5050028, at *1 n.2 (E.D. Pa. Oct. 21, 2024) ("Based upon Toland, which

DeFoy could not consider since it had yet been decided, it is clear that Petitioner had an available

state court remedy; hence, he was required to comply with the exhaustion requirement.").

Nevertheless, even if these other district court decisions choosing not to follow DeFoy are

correct concerning the change in Pennsylvania law recognizing that Pennsylvania inmates now

have a state-court remedy they can exhaust concerning their parole-denial claims because the

Commonwealth Court has recognized that constitutional claims, including due process

challenges, can be raised through a petition for a writ of mandamus, the fact remains that DeFoy

is a precedential Third Circuit decision that remains binding on this Court under principles of

vertical stare decisis.  See Pease v. Lycoming Engines, No. 10-cv-00843, 2011 WL 6339833, at

*22 n.35 (M.D. Pa. Dec. 19, 2011) ("Stare decisis requires district courts to follow the binding

precedents of higher courts."); Hernandez v. Johnson & Johnson Consumer Inc., No. 19-cv-

15679, 2023 WL 2634496, at *3 (D.N.J. Mar. 24, 2023) ("As this is a federal district court in

New Jersey, it is duty-bound to follow precedent set forth by the Third Circuit, the federally

recognized circuit in which this Court sits." (citations omitted)); UTI Corp. v. Fireman's Fund

Ins. Co., 896 F. Supp. 362, 379 (D.N.J. 1995) ("[A]s a federal district court, we are bound by the

pronouncements of the Third Circuit Court of Appeals."); see also Hutto v. Davis, 454 U.S. 370,

375 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent

of this Court must be followed by the lower federal courts . . . ."); cf. United States v. Higdon,

638 F.3d 233, 247 (3d Cir. 2011) ("[N]either this court, nor any other court, can tolerate a

situation where a judge decides to follow his/her own custom and concepts of justice rather than

the precedent of the applicable appellate court or the United States Supreme Court.  Ours is a

nation of laws, not judges."), abrogated on other grounds by Rehaif v. United States, 588 U.S.

225 (2019).

In addition, in 2012, the Third Circuit recognized that the Commonwealth Court had

"adjudicated mandamus actions involving parole denials by the Board and [had] considered

constitutional claims other than ex post facto claims," and yet still decided that "to the extent

there has been any shift in Pennsylvania law, we cannot comfortably say that it is clear enough to

alter our decision in DeFoy."  See Roman v. DiGuglielmo, 675 F.3d 204, 209 (3d Cir. 2012).  In

deciding not to disturb DeFoy, the Third Circuit in Roman explained that:

> The availability of Pennsylvania mandamus review for inmates challenging the
> denial of their parole on non-ex post facto grounds remains unsettled.  Though

certain courts since <u>DeFoy</u> have demonstrated some willingness to consider constitutional claims outside the <u>ex post facto</u> context, none have addressed or acknowledged the language that drove our reading of <u>Coady</u>. <u>See</u> <u>Nieves v. Pa. Bd. of Prob. & Parole</u>, 995 A.2d 412, 418 (Pa. Commw. Ct. 2010) (substantive due process and <u>ex post facto</u>); <u>Wilson v. Pa. Bd. of Prob. & Parole</u>, 942 A.2d 270 (Pa. [Commw.] Ct. 2008) (Fifth Amendment in context of sexual offender rehabilitation program); <u>Dodgson v. Pa. Bd. of Prob. & Parole</u>, 922 A.2d 1023, 1026 (Pa. Commw. Ct. 2007) (due process, equal protection, Fifth Amendment, court access and <u>ex post facto</u>); <u>Nickson v. Pa. Bd. of Prob. & Parole</u>, 880 A.2d 21, 23 (Pa. Commw. Ct. 2005) (Eighth Amendment). <u>But see</u> <u>Nieves</u>, 995 A.2d at 421–22 (Leavitt, J., concurring) (citing <u>Coady</u> for the proposition that "mandamus will not lie" in challenges to the denial of parole and arguing that the court need not have considered the claims before it at all).

<u>See</u> <u>id.</u> at 209 n.4.

The Court acknowledges that the Third Circuit in <u>Roman</u> did not have the benefit of <u>Toland</u> and other Commonwealth Court decisions in deciding not to overrule <u>DeFoy</u>. Nevertheless, a federal district court cannot decide not to follow appellate court precedent simply because it may be wrong. To the contrary, "[r]especting <u>stare</u> <u>decisis</u> means sticking to some wrong decisions. The doctrine rests on the idea . . . that it is usually 'more important that the applicable rule of law be settled than that it be settled right.'" <u>See</u> <u>Kimble v. Marvel Entmt., LLC</u>, 576 U.S. 446, 455 (2015) (quoting <u>Burnet v. Coronado Oil & Gas Co.</u>, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting)).

In conclusion, if the Court were to adopt Respondents' argument and no longer follow <u>DeFoy</u>, Shoop's habeas claims pertaining to his parole denial in March 2025 should be dismissed for failure to exhaust because he did not file a petition for a writ of mandamus with the Commonwealth Court in which he challenged the Board's denial of parole and, if the Commonwealth Court denied the petition, filed a petition for allowance of appeal with the Pennsylvania Supreme Court. <u>See, e.g.</u>, <u>Williams v. Wynder</u>, 232 F. App'x 177, 181 (3d Cir. 2007) (unpublished) (concluding that, to fully exhaust a challenge to the Parole Board's decision

to revoke parole, a habeas petitioner must seek allowance of appeal in the Pennsylvania Supreme Court after an adverse decision by the Commonwealth Court).[3]  Nonetheless, as the Court must continue to follow DeFoy, Shoop did not need to fully exhaust his challenges to his parole denials through the state courts, and the Court will consider the merits of his challenge to his March 2025 parole denial here.[4]

    **C.**    **The Merits**

    The Parole Board has vast discretion to refuse or deny parole.  See 61 Pa. C.S. § 6137(a)(1) (stating that, inter alia, the Parole Board "may release on parole any offender to whom the power to parole is granted to the board by this chapter, . . . whenever in its opinion: (i) The best interests of the offender justify or require that the offender be paroled. (ii) It does not appear that the interests of the Commonwealth will be injured by the offender's parole").  The record clearly reflects that the Parole Board based its parole determination here on factors that it is statutorily required to consider in accordance with 61 Pa. C.S. § 6135.  See McGinnis v. Royster, 410 U.S. 263, 277 (1973) (holding that there is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's

---

[3]  This reasoning would be equally applicable to any prior parole denials, to the extent they are not moot, as it does not appear that Shoop filed any petitions for mandamus with the Commonwealth Court following those denials of parole.

[4]  Some district courts decline to address the exhaustion issue in Section 2254 habeas cases involving challenges to parole denials if the petitioner's habeas claims lack merit.  See Strother v. Pa. Bd. of Parole, No. 24-cv-00157, 2025 WL 2050200, at *1 (W.D. Pa. July 22, 2025) ("A court . . . 'may bypass the exhaustion issue altogether should [it] decide that the petitioner's habeas claim fails on the merits.'" (alteration in original) (quoting Roman, 675 F.3d at 209)); see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007) ("[B]ecause we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

conduct and his rehabilitative progress before he is eligible for parole").  Under Section 6135,

the Parole Board must consider:

> (1) The nature and circumstances of the offense committed.

> (2) Any recommendations made by the trial judge and prosecuting attorney.

> (3) The general character and background of the inmate.

> (4) Participation by an inmate sentenced after February 19, 1999, and who is serving a sentence for a crime of violence as defined in 42 Pa. C.S. § 9714(g) (relating to sentences for second and subsequent offenses) in a victim impact education program offered by the Department of Corrections.

> (5) The written or personal statement of the testimony of the victim or the victim's family submitted under section 6140 (relating to victim statements, testimony and participation in hearing).

> (6) The notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available.

> (7) The conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record.

See 61 Pa. C.S. § 6135(a)(1)–(7).

In this case, Shoop has not pointed to any impermissible factor the Parole Board relied

on, or any factor that could be described as conscience shocking or deliberatively indifferent.  In

fact, he does not address most of the Parole Board's reasons for denying him parole in March

2025, such as his (1) risk and needs assessment showing his level of risk to the community, (2)

prior unsatisfactory supervision history, (3) minimization or denial of the nature and

circumstances of his offenses, (4) refusal to accept responsibility for his offenses, and (5) his lack

of remorse.  Instead, he essentially disagrees with the Parole Board's determination that he failed

to demonstrate motivation for success insofar as he completed courses and programs while

incarcerated and had a home plan to a reentry center (that was seemingly approved in 2021).  He

also disagrees with the Parole Board's consideration of his past conduct when it denied parole. These disagreements do not entitle him to habeas relief.

By merely disagreeing with the Board's analysis and asserting that the Board could have done more when considering whether to grant him parole, Shoop is essentially requesting that the Court second-guess the Board, something that the Court cannot do.  See Coady, 251 F.3d at 487.  The Board explained to Shoop that it reached the decision to deny him parole after interviewing him, reviewing his file, and considering the "all matters" in the Code.  (Doc. No. 8-12 at 1.)  It also provided "some basis" for its decision insofar as it provided eight (8) minimally detailed reasons for denying parole (id.), none of which were based on impermissible factors. Overall, Shoop has failed to meet his burden of demonstrating that the Board violated his constitutional rights in denying parole in March 2025.  Accordingly, the Court will deny his Section 2254 petition.

**D.    Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of [their] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322 (2003).  Because reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA.  Thus, the Court will decline to issue a certificate of appealability, as Shoop

has failed to demonstrate "a substantial showing of the denial of a constitutional right."  See 28

U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## IV.    CONCLUSION

For the reasons set forth above, the Court will deny Shoop's Section 2254 habeas

petition, decline to issue a certificate of appealability, and direct the Clerk of Court to close this

case.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania